Joe K. **EMRICK**, Plaintiff,

v.

**LIBBEY–OWENS–FORD COMPANY,
Defendant.**

No. **4:94CV86.**

United States District Court,
E.D. Texas,
Sherman Division.

Feb. 8, 1995.

394

Jack G. Kennedy, David M. Kennedy, Kennedy, Minshew, Campbell & Morris, Sherman, TX, for plaintiff.

Jonathan C. Wilson, William C. Strock, Haynes & Boone, Dallas, TX, for defendant.

## MEMORANDUM OPINION and ORDER

PAUL N. BROWN, District Judge.

This is a suit by a former employee against his former employer under the Americans with Disabilities Act. The former employer has filed a motion for summary judgment and a motion for partial summary judgment.

## INTRODUCTION

Plaintiff, Joe K. Emrick ("Emrick"), is a former employee of Defendant, Libbey–Owens–Ford Company ("LOF"). LOF employed Emrick in its Sherman, Texas, facility from February 1988 until September 1993. On December 4, 1990, Emrick was diagnosed with Multiple Sclerosis ("MS"). At that time, Emrick notified LOF of his condition, but asserted that he was fully able to continue in his current position of NIAPS clerk. In September 1992, LOF allegedly experienced a reduction-in-force and attempted to reassign Emrick. Emrick declined the offered positions and informed LOF of new medical restrictions on his physical activity. Being allegedly unable to accommodate Emrick at the Sherman facility, on May 7, 1993, LOF's human resources department attempted to locate accommodating positions at other facilities, however, none were found. In May 1993, Emrick filed a complaint with the EEOC alleging that LOF was discriminating against him on the basis of his MS, in violation of the Americans with Disabilities Act (the "ADA"). Emrick filed suit in this Court in February of 1994 on the same basis.

## SUMMARY JUDGMENT STANDARD

The granting of summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The trial court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enterprises, Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir.1981) (citations omitted). The party seeking summary judgment carries the burden of demonstrating that there is no actual dispute as to any material fact in the case. This burden, however, does not require the moving party to produce evidence showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The moving party satisfies its burden by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party has satisfied its burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). If the nonmovant fails to set forth specific facts in support of allegations essential to that party's claim and on which that party will bear the burden of proof, then summary judgment will be appropriate. *Celotex*, 477 U.S. at 321–23, 106 S.Ct. at 2552–53. Even if the nonmovant brings forth evidence in support of its allegations, summary judgment will be appropriate "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted).

## Effect of the ADA on Seniority Systems

LOF contends that the ADA does not require an employer to override a seniority system in order to reasonably accommodate a disabled employee. The Court notes that under the Rehabilitation Act, 29 U.S.C. §§ 701–96, the ADA's predecessor, LOF's position clearly prevails. Under the ADA, however, the answer is less certain.

 The general rule under the Rehabilitation Act was that the reassignment of an employee in violation of a collective bargaining agreement or seniority system was *per se* unreasonable. *Carter v. Tisch*, 822 F.2d 465, 467–68 (4th Cir.1987); *Jasany v. United States Postal Serv.*, 755 F.2d 1244, 1251 (6th Cir.1985); *Daubert v. United States Postal Serv.*, 733 F.2d 1367, 1368–72 (10th Cir.1984); *Florence v. Frank*, 774 F.Supp. 1054, 1062 (N.D.Tex.1991). The rationale for this rule is that the rights of one employee under the Rehabilitation Act should not prevail over the rights of all other employees under a collective bargaining agreement or seniority system. *Daubert*, 733 F.2d at 1369; *Hurst v. United States Postal Serv.*, 653 F.Supp. 259, 263 (N.D.Ga.1986). However, these decisions are not binding in this case. Rather, decisions under the Rehabilitation Act are only persuasive authority for ADA decisions.

*Vande Zande v. State of Wis. Dep't of Admin.*, 851 F.Supp. 353, 359 (W.D.Wis.1994); *Harmer v. Virginia Elec. and Power Co.*, 831 F.Supp. 1300 (E.D.Va.1993); *See* 42 U.S.C. § 12117(b) (calling for a coordination of standards under the Rehabilitation Act and the ADA).

The Supreme Court has on two occasions examined the issue of valid seniority systems and their effect in Title VII lawsuits. The Supreme Court concluded that bona fide seniority systems are lawful and that their routine application does not do violence to an employee's rights under Title VII. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 78–80, 97 S.Ct. 2264, 2274–75, 53 L.Ed.2d 113 (1977); *Lorance v. AT&T Technologies, Inc.*, 490 U.S. 900, 900–13, 109 S.Ct. 2261, 2263–69, 104 L.Ed.2d 961 (1989). Moreover, the Court held that such systems are to be afforded special treatment because it is necessary that the Court strike a balance between the interest of an employee in being protected against discrimination and the rights of those employees who may work for many years in reliance on facially valid seniority systems. *Id.* The Court further concluded that to alter entitlements under a valid seniority system can greatly disrupt a settled and worked-for reliance on valid interests and expectations of many innocent workers. *Lorance*, 490 U.S. at 904–09, 109 S.Ct. at 2265–67.

■ The parties have not provided and the Court is unable to discover any cases on this issue decided under the ADA. Thus, the Court will turn its attention to the legislative history of the ADA and commentary thereon to look for guidance in this case. The legislative history of the ADA discloses a particular concern of Congress relating to reasonable accommodation of employees when that accommodation would conflict with a collective bargaining agreement. Specifically, the legislative history states:

> The section 504 regulations provide that "a recipient's obligation to comply with this subpart [employment] is not affected by any inconsistent term of any collective bargaining agreement to which it is a party." 45 C.F.R. 84.11(c). This policy also applies to the ADA. An employer cannot use a collective bargaining agreement to accomplish what it otherwise would be prohibited from doing under this legislation.

· · · · ·

> The collective bargaining agreement could be relevant, however, in determining whether a given accommodation is reasonable. For example, if a collective bargaining agreement reserves certain jobs for employees with a given amount of seniority, it may be considered as a factor in determining whether it is a reasonable accommodation to assign an employee with a disability without seniority to that job.

S.REP. No. 116, 101st Cong., 1st Sess. 32 (1989) and H.R.REP. No. 485(II), 101st Cong., 2d Sess. 63 (1990) 1990 U.S.Code Cong. & Admin.News 267, 345; *reprinted in* COMM. ON EDUC. AND LABOR, 101st Cong.2d Sess., LEGISLATIVE HISTORY OF PUBLIC LAW 101–336, THE AMERICANS WITH DISABILITIES ACT, 107 (1990). Unlike the Rehabilitation Act, the ADA specifically lists reassignment as a method of accommodation. 42 U.S.C. § 12111(9). Moreover, most commentators examining the issue before the Court conclude that rather than adopting the *per se* rule allowing a collective bargaining agreement to prevail under the Rehabilitation Act, decisions under the ADA should weigh any conflict with a collective bargaining agreement as merely another factor in examining the reasonableness of the proposed accommodation. *See* Joanne Jocha Ervin, *Reasonable Accommodation and The Collective Bargaining Agreement Under The Americans With Disabilities Act*, 1991 DET.C.L.REV. 925 (1991); Rose Daly–Rooney, Note, *Reconciling Conflicts Between the Americans with Disabilities Act and The National Labor Relations Act to Accommodate People With Disabilities*, 6 DEPAUL BUS.L.J. 387 (1994).

The Court finds that because of the specific listing of reassignment as a means of accommodation and because of the seemingly plain wording of the legislative history of the ADA regarding conflicts with a seniority system or collective bargaining agreement, the *per se* rule adopted under the Rehabilitation Act does not apply to cases under the ADA. Rather, the Court is of the opinion that when reassignment of an otherwise qualified em-

ployee would conflict with an otherwise valid collective bargaining agreement or seniority system, this conflict shall be weighed by the fact finder in evaluating the reasonableness of such an accommodation under the ADA. LOF's summary judgment should be denied as it relates to the effect of seniority systems under the ADA.

### Voluntary Reassignment as Reasonable Accommodation Under the ADA

█ LOF next argues that it is entitled to summary judgment on the basis that it attempted to reasonably accommodate Emrick and that its efforts at reasonable accommodation were refused. As previously stated, the ADA requires that employers make efforts to reasonably accommodate qualified employees with a disability to ensure them equal opportunities in the workplace. 42 U.S.C. § 12112(b)(5)(A); *See* AMERICANS WITH DISABILITIES ACT OF 1990: EEOC TECHNICAL ASSISTANCE MANUAL AND RESOURCE DIRECTORY B–42 (CCH 1992) (hereinafter EEOC MANUAL). The ADA lists several means by which an employer may attempt to reasonably accommodate a qualified employee. Among those options listed in the Act is reassignment to a vacant position. 42 U.S.C. § 12111(9)(B). The ADA does not require that an employer create a vacancy by "bumping" another employee. The Court, however, is of the opinion that another employee's offer to voluntarily relinquish their position and accept reassignment, thus enabling the disabled employee to have the newly vacated position, may be a valid means of attempting a reasonable accommodation.[1] *See, e.g.,* 29 C.F.R. § 1605.2(d)(1) (1993) (listing voluntary shift swapping and voluntary transfers as a means of reasonably accommodating conflicts between employment and religious practices).

█ Emrick has presented evidence that one or more of LOF's employees was allegedly willing to volunteer their position for Emrick. The Court finds that because voluntary relinquishment by an employee is a

possible means of reasonable accommodation under the ADA, Emrick has succeeded in raising a genuine issue of material fact as to LOF's efforts at reasonably accommodating him. Thus, the Court is of the opinion that LOF's motion for summary judgment should be denied as it relates to LOF's reasonable accommodation of Emrick.

### Transfer as a Reasonable Accommodation Under the ADA

Finally, Emrick contends that LOF was under a statutory obligation to consider transferring him to another LOF facility as a means of reasonably accommodating his disability. LOF maintains the ADA does not require such an accommodation. The Court agrees with LOF and finds that while there are situations where transfer may be warranted as a means of reasonable accommodation, such is not the case with Emrick.

█ Specifically, Emrick argues that under "reassignment" in 42 U.S.C. § 12111(9)(B), if LOF had a vacant position in any of their facilities for which Emrick was otherwise qualified, LOF must have offered Emrick that position as reasonable accommodation of his disability. The ADA is not intended to give persons with disabilities preferential treatment, but rather is intended to provide them with the same opportunities as their nondisabled counterparts. 29 C.F.R.App. § 1630.2(*o*) (1994) (stating that the ADA was intended to ensure that employees with disabilities enjoyed the same benefits and privileges of employment as those employees without disabilities); Rebecca Mastrangela, Comment, *Does the Americans With Disabilities Act of 1990 Impose an Undue Burden on Employers?*, 32 DUQ. L.REV. 269 (1994) (stating that reasonable accommodation under the ADA is not meant to include special treatment for the disabled, rather, it is only intended to be an "equalizing means of enhancing a competitive work environment"). Furthermore, the ADA is

---

1. The Court wishes to note that it is not stating that failure of an employer to accept a voluntary relinquishment is a failure to reasonably accommodate *per se*. There are other factors to consider in evaluating the reasonableness of an employer's attempts at reasonable accommodation. For

example, just because an employee makes known her willingness to be reassigned for the benefit of the disabled employee does not necessarily mean that the employer is in a position to reassign her to another position.

not intended as an affirmative action program for employees with disabilities. Jeffrey O. Cooper, Comment, *Overcoming Barriers to Employment: The Meaning of Reasonable Accommodation and Undue Hardship in the Americans With Disabilities Act,* 139 U.PA.L.REV. 1423, 1431–35 (1991) (comparing affirmative action legislation with the Rehabilitation Act and the ADA). Moreover, the ADA does not require that an employer substantially modify its operations in order to ensure every disabled individual the benefits of employment. *See Pandazides v. Virginia Bd. of Educ.,* 946 F.2d 345, 348–49 (4th Cir.1991); *Carter,* 822 F.2d at 467.[2]

Because it is the aim of the ADA to merely ensure equality and not preference to disabled employees, an employer is only required to offer transfer to another facility in situations where it is the regular practice of that employer to transfer employees between facilities. *See* Robert B. Fitzpatrick and E. Anne Benaroya, *Reasonable Accommodation and Undue Hardship Under the ADA: Selected Issues,* C669 ALI–ABA 389, 406–07 (1991) citing *Dexler v. Tisch,* 660 F.Supp. 1418 (D.Conn.1987).[3] To hold otherwise would entitle employees with disabilities to more opportunities for employment than are offered to employees without disabilities, and such is not the intent of the ADA.

In applying these rules to Emrick's case, there is no evidence of LOF regularly transferring employees between its facilities. On the contrary, LOF presents evidence that it does not transfer employees between facilities. Thus, the Court finds that as a matter of law, LOF was not required by the ADA to offer Emrick a transfer to another LOF facil-

2. Finding that the ADA mandates transfer as a means of reasonable accommodation in every case would impose a great burden on many employers which is not contemplated by the statute. For example, for those businesses that do not transfer employees between facilities, those employers would be required to establish a tracking system for all vacant positions within their organization. The Court is of the opinion that the ADA was not intended to cause such a substantial administrative burden on employers.

3. At least one article disagrees with this view and argues that the ADA mandates that employers with multiple facilities maintain a system for accommodation on a company-wide basis. See

ity as an attempt to reasonably accommodate his disability.

## CONCLUSION

For the aforementioned reasons, the Court is of the opinion Defendant's Motion for Summary Judgment should be denied and Defendant's Motion for Partial Summary Judgment should be granted.

IT IS SO ORDERED.

Matthew B. Schiff and David L. Miller, *Reasonable Accommodation Under the Americans with Disabilities Act,* 28 GONZ.L.REV. 219 (1992–93). The Court notes, however, that the case relied upon for the authors' conclusion is a decision involving the Rehabilitation Act and the U.S. Army as a defendant. *Rhone v. U.S. Dep't of the Army,* 665 F.Supp. 734 (E.D.Mo.1987). The Court finds that the opinion in *Rhone* is consistent with this Court's decision because the Army regularly transfers personnel and has a system designed to accomplish that practice. The Court finds, however, that the conclusion reached by the article's authors is too broad to persuade the Court that this is the rule in every case.