**Eileen RANSOM, Plaintiff,**

v.

**STATE OF ARIZONA BOARD OF REGENTS, a political entity; Lynda Sypherd, in her individual and official capacity; Paul Sypherd, husband of Lynda Sypherd; Suzanne Van Ort, in her individual and official capacity, Defendants.**

**No. CIV. 95–821 TUC ACM.**

United States District Court, D. Arizona.

Oct. 22, 1997.

898

Rose A. Daly–Rooney, Tucson, AZ, for Plaintiff.

Cynthia T. Kuhn, Rusing & Lopez, Tucson, AZ, for Defendants.

## ORDER

MARQUEZ, Senior District Judge.

Eileen Ransom, an employee of the University of Arizona, sues Defendant the State of Arizona Board of Regents for violating the American Disabilities Act (ADA), the Federal Rehabilitation Act (FRA), the Arizona Civil Rights Act (ACRA) and for wrongfully terminating her in violation of public policy. She sues the other Defendants in their individual and official capacities for violations of the ACRA and for wrongfully terminating her employment in violation of public policy. She also sues the individual Defendants under 42 U.S.C. § 1983.

Plaintiff suffers from carpal tunnel syndrome and myofascial pain syndrome[1] which disables her from performing the heavy word processing duties of the full-time administrative secretary position she held at the College of Nursing. When Plaintiff became unable to perform her job at the College of Nursing even with the many accommodations provided by the Defendant, she requested reassignment to a position with lighter word processing demands. The University considered Plaintiff's request pursuant to its general transfer policy that all employees, including those with disabilities, must compete for job reassignments through the competitive hiring process. Plaintiff was not reassigned and her employment was terminated.

Plaintiff files a Partial Motion for Summary Judgment challenging the Defendants' policy as applied to disabled persons seeking accommodation under the ADA. Defendants make intra departmental transfers or reassignments at the discretion of the department head, but employees must compete with all qualified applicants for interdepartmental transfers or reassignments. Defendants argue that the ADA merely ensures equality, not preference to disabled employees, and that Plaintiff was treated no differently from any other employee whose job was eliminated. Therefore, as a matter of law, its policy does not violate the ADA, the ACRA, or the FRA. Defendants also argue that the individually named Defendants are not employers within the meaning of ACRA and that the comprehensive remedial schemes of the ADA and FRA foreclose the Plaintiff's § 1983 claim. Lastly, Defendants seek summary judgment on Plaintiff's claim of retaliation, but Plaintiff abandoned it.[2] Therefore, the Court need not consider that issue here.

### A. Standard on Summary Judgment

On summary judgment, the moving party is entitled to judgment as a matter of law, if the Court determines that in the record before it there exists "no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The mere existence of some alleged factual dispute between the parties will not defeat an

---

1. Whether a person has a disability as defined by the ADA is to be decided through an individualized inquiry on a case-by-case basis. *Davoll v. Webb*, 955 F.Supp. 110, 112 (D.Colo.1997). "Disability" with respect to an individual means "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

For purposes of this Motion, Defendants assume that Plaintiff is "disabled" as defined under the ADA, FRA and ACRA. Defendants reserve the right to raise the issue by future motion. (Defendants' Motion for Summary Judgment (MSJ) at 2.)

2. *See* (Plaintiff's Supplemental Statement of Facts to Reply in Support of Motion for Partial Summary Judgment, filed September 15, 1997, at ¶ 14.) Accordingly, Defendants' Motion for Summary Judgment as to Plaintiffs claims of retaliation is moot and the claims shall be dismissed.

otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A material fact is any factual dispute that might affect the outcome of the case under the governing substantive law. *Id.* at 248, 106 S.Ct. at 2510. A factual dispute is genuine if the evidence is such that a reasonable jury could resolve the dispute in favor of the nonmoving party. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, but is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). A party opposing a motion for summary judgment cannot rest upon mere allegations or denials in the pleadings or papers, but instead must set forth specific facts demonstrating a genuine issue for trial. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. "If evidence is merely colorable ... or is not significantly probative, summary judgment may be granted." *Eisenberg v. Insurance Co. of North Am.*, 815 F.2d 1285, 1288 (9th Cir.1987). In determining whether to grant summary judgment, the Court views the facts and inferences from these facts in the light most favorable to the nonmoving party. *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 577, 106 S.Ct. 1348, 1351, 89 L.Ed.2d 538, (1986).

The Judge's role on a motion for summary judgment is not to determine the truth of the matter or to weigh the evidence, or determine credibility, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The inquiry mirrors the standard for a directed verdict: whether the evidence presented reveals a factual disagreement requiring submission to a jury or whether the evidence is so one sided that one party must prevail as a matter of law. *Id.*

B. *As a Matter of Law, Defendants' Reassignment Policy that a Qualified Employee with a Disability Seeking Reassignment as an Accommodation under the ADA Must Apply for and Compete with all Other Applicants for a Vacant Position, Violates the ADA, the FRA and the ACRA.*[3]

■ The ADA defines a "qualified individual with a disability" as "an individual with a disability, who with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Reasonable accommodation may include "job restructuring, part-time or modified work schedules, **reassignment to a vacant position**, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters and other similar accommodations for individuals with

---

**3.** The Court consolidates its analysis of whether Defendants' reassignment policy violates the ADA, the FRA and the ACRA because pursuant to the FRA Amendments of 1992, the ADA and § 504 of the FRA are to be interpreted in a similar manner with respect to employment. 138 Cong.Rec. H10736 (October 2, 1992). Under the FRA, employees may be reassigned as a disability accommodation. *Tuck v. HCA Health Serv. of Tennessee*, 7 F.3d 465 (6th Cir.1993); *Shiring v. Runyon*, 90 F.3d 827 (3rd Cir.1996). Further, ACRA is similar in purpose and intent to the federal employment discrimination laws, § 504 and the ADA. *St. Luke's Health System v. State Dept. of Law, Civil Rights Div.*, 180 Ariz. 373, 377, 884 P.2d 259, 263 (1994); *Bogue v. Better–Bilt Aluminum Co.*, 179 Ariz. 22, 27, 875 P.2d 1327, 1332 (1994). Both the ADA and

ACRA make it an unlawful employment practice for employers to fail or refuse to provide reasonable accommodations and set similar parameters on the duty to accommodate. This Court rejects Defendants' argument that federal law exceeds the scope of the ACRA which is narrower because it does not list "reassignment" as a type of reasonable accommodation. Any void left by Arizona's definition of reasonable accommodation is filled by federal law. *See Bogue*, 179 Ariz. at 27, 875 P.2d at 1332 (Arizona Court of Appeals looked to federal law for a definition of physical impairment, a list of possible conditions included in the physical impairment category, and a set of factors to analyze substantial limitation). Reassignment being an integral part of the ADA, it is a part of ACRA too.

disabilities." 42 U.S.C. § 12111(9)(B) (emphasis added).

■ "Discrimination under the ADA includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless [the employer] can demonstrate that the accommodation would impose undue hardship on the operation of the business of [the employer].'" *United States v. City and County of Denver*, 943 F.Supp. 1304, 1310 (D.Colo.1996) (quoting 42 U.S.C. § 12112(b)(5)(A)). The only defense available to Defendants under a reasonable accommodation claim is whether the requested reassignment works an "undue hardship on the employer." *Id.*

Instead of claiming undue hardship, Defendants argue that the "ADA [does not] require affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled persons be given priority in hiring or reassignment over those who are not disabled." *Daugherty v. El Paso,* 56 F.3d 695, 700 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996). "It prohibits employment discrimination against qualified individuals with disabilities, no more and no less." *Id.* This line of reasoning diminishes the undue hardship assessment and shifts a court's focus to whether the disabled employee received the same opportunity to be reassigned to a vacant position as available to all employees without disabilities. *See: Daugherty; Emrick v. Libbey–Owens–Ford Co.,* 875 F.Supp. 393 (E.D.Tex.1995); *Foreman v. Babcock & Wilcox Co.,* 117 F.3d 800 (5th Cir.1997). Therefore, as a matter of law, no more is required to satisfy the employer's duty to accommodate a disabled employee under the ADA. *Emrick,* 875 F.Supp. at 398.

Plaintiff responds that while equality of treatment is the ultimate question in any discrimination case, the ADA is a comprehensive congressional scheme to end employment discrimination on the basis of disability and includes the requirement of reasonable accommodation to level the playing field between workers with disabilities and those without. 29 C.F.R. App. § 1630.2(*o*). This is logical because requiring an employer to make reasonable accommodations before terminating a disabled employee who is unable to perform his or her job by definition must require "something more" of an employer, who otherwise may terminate nondisabled employees who cannot perform their jobs without any concession.

■ ADA regulations and interpretive guidelines promulgated by the EEOC are in keeping with this logic. It is well settled that "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). When Congress explicitly authorizes an agency to promulgate regulations relating to a specific statute, "[s]uch legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* Moreover, a reasonable interpretation of a statute by the agency charged to administer it is entitled to deference from this Court. *Trustees of California State University v. Riley,* 74 F.3d 960, 964 (9th Cir.1996). This Court will only reject the EEOC's interpretation if it is contrary to clear congressional intent or frustrates the policy that Congress sought to implement. *Id.* at 963 (citing *Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. at 2782 n. 9). It is with this mandate that the Court begins its analysis.

The EEOC's position is clear: "Employers should reassign the individual to an equivalent position ... if the individual is qualified, and if the position is vacant within a reasonable amount of time." 29 C.F.R. App. § 1630.2(*o*). Reassignment must be considered when an employee is unable to perform his or her present job, even with reasonable accommodations. 29 C.F.R. App. § 1630.2(*o*). Vacant positions include ones that are currently vacant or are expected to become vacant within a reasonable time under a totality of the circumstances test. 29 C.F.R. App. § 1630.2(*o*). Reassignment, unlike other accommodations enumerated by Congress, applies only to employees and not applicants. 29 C.F.R. App. § 1630.2(*o*). Reassignment is a last resort to be utilized

only if the employee cannot be reasonably accommodated in his or her existing job. 29 C.F.R. App. § 1630.2(*o*). Reassignment to accommodate a disabled employee should not bump another employee from his or her position. 29 C.F.R. App. § 1630.2(*o*). The employer is not required to create a position or promote the employee to effectuate reassignment, *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1187 (6th Cir.1996), nor keep an employee on unpaid leave indefinitely until a position becomes vacant. *Id.* If an employer cannot find an equivalent vacant position, the employer can offer the employee a reassignment to a lesser position, in terms of pay or status. 29 C.F.R. App. § 1630.2(*o*)

Within these parameters, reassignment of disabled employees as a reasonable accommodation is not automatic. It applies under the following limited circumstance: 1) the employee becomes unable to perform the essential function of the job even with reasonable accommodations and 2) there exists, or soon will be, a vacant position which the employee is qualified to perform. An employer need not reassign a disabled employee under any other circumstances, such as requests by disabled employees who want transfers or reassignments to other jobs for reasons such as lay off, better job opportunity, or convenience. Defendants' ADA coordinator estimates that over a two-year period, there were only two or three requests for reassignment as an accommodation for disability. (Plaintiff's Statement of Facts (SOF) at ¶ 21.)

The Court finds that these provisions do not render the ADA an affirmative action program, but serve as a method of leveling the playing field between disabled and nondisabled employees, in the sense of enabling a disabled worker to do the job without creating undue hardship on the employer. In addition to providing individuals with disabilities an equal opportunity to pursue employment opportunities, the purpose of the ADA is to reduce societal costs of dependency and nonproductivity. *Stone v. Mount Vernon*, 118 F.3d 92, 98 (2nd Cir. 1997); 42 U.S.C. § 12101(a)(9). The balancing suggested by the EEOC comports with the multiple purposes of the ADA.

In *Denver*, the city's charter did not provide for transfers between civil service and career service personnel systems. Police officers were civil service employees and because there was no provision in the city charter for transfers to Nanded type positions, classified as career service jobs, defendants argued that there were no positions available for police officers who, because of a disability, were unable to perform the essential functions of their jobs: i.e., unable to make forcible arrests. The city asserted three arguments: 1) reassignment as an accommodation is only required where a reassignment policy already exists for all employees relying on *Emrick*, 875 F.Supp. at 398); 2) the ADA does not require the creation of a reassignment policy where none exists, *id.*, and 3) an accommodation is an undue burden if it requires a fundamental alteration in the nature of the city's program, (relying on *Barth v. Gelb*, 2 F.3d 1180, 1187 (D.C.Cir. 1993), *cert. denied*, 511 U.S. 1030, 114 S.Ct. 1538, 128 L.Ed.2d 190 (1994)). The court, however, rejected *Emrick*, insofar as it supported the proposition that transferring disabled police officers was an unreasonable accommodation because such transfers were not available to nondisabled officers. *United States v. Denver*, 943 F.Supp. at 1310–11. The court rejected defendant's assertions of undue hardship because the potential reassignments were minimal and would not disrupt in any significant way the existing merit system.

Similarly, the Ninth Circuit in *Buckingham v. United States*, 998 F.2d 735, 740 (9th Cir.1993) followed the Supreme Court's ruling in *School Board of Nassau County, Florida v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987): "[a]lthough [employers] are not required to find another job for an employee who is not qualified for the job he or she was doing, they cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies." *Arline*, 480 U.S. at 289 n. 19, 107 S.Ct. at 1131 n. 19. In *Buckingham*, the court rejected the argument that the FRA enacted a per se ban against transfers that impinged upon collective bargaining

agreements.[4] The court held that transferring an employee disabled by AIDS from Memphis to Los Angeles was a reasonable accommodation in spite of a collective bargaining agreement that only allowed such preferential geographical reassignments to employees with one year of seniority, and plaintiff did not have one year of service. The court reasoned that the regulations promulgated under the FRA emphasize an affirmative obligation to accommodate:

An agency shall make reasonable accommodation to the known physical or mental limitations of a qualified handicapped applicant or employee unless the agency can demonstrate that the accommodation would impose an undue hardship on the operation of its program.

*Buckingham*, 998 F.2d at 739 (quoting 29 C.F.R § 1613.704(a)). Therefore, the court held, reasonable accommodations, including job transfers, "may require employers to alter existing policies or procedures that they would not change for non-handicapped employees, but 'that is the essence of reasonable accommodation.'" *Id.* (citing *McWright v. Alexander*, 982 F.2d 222, 227 (7th Cir.1992)). The Postal Service's policy provided that one in four vacant positions was reserved for geographical reassignments. The court reasoned that one of the other three vacancies could be filled by a disabled person seeking an accommodation. *Id.* at 741. The reassignment was not allowed under existing Postal Service policies, meaning nondisabled employees without one year of service could not have obtained the requested transfer, however, the reassignment was reasonably available, with minimal modification of the existing policy.

In light of *Buckingham*, this Court rejects Defendants' contention that disabled employees are entitled to reassignment accommodations under the ADA only in the same way as an employer provides for reassignment of nondisabled, employees. *See Wood v. County of Alameda*, 1995 WL 705139, *11 (N.D.Cal.1995) (rejecting the narrowed holdings of other courts that, "require employers

to reassign qualified individuals with a disability to a vacant position, but only if, the employer has a regular practice or policy of reassigning nondisabled employees to other positions." citing *Emrick*, 875 F.Supp. at 398; *Howell v. Michelin Tire Corp.*, 860 F.Supp. 1488, 1492 (M.D.Ala.1994); *Reigel v. Kaiser Foundation Health Plan*, 859 F.Supp. 963, 973 (E.D.N.C.1994); *Eckles v. Consolidated Rail Corp.*, 890 F.Supp. 1391, 1401, 1413 (S.D.Ind.1995), *aff'd*, 94 F.3d 1041 (7th Cir. 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1318, 137 L.Ed.2d 480 (1997)). In other words, "allowing the plaintiff to compete for jobs open to the public is no accommodation at all." *Wood v. County of Alameda*, 1995 WL 705139 at *14. *Cf., Aka v. Washington Hospital Center*, 116 F.3d 876, 892 (D.C.Cir. 1997) (if seniority preference in bargaining agreement preempts handicapped transfer provision, seniority preference renders handicapped-transfer provision completely ineffective) *rehearing enbanc granted*, 124 F.3d 1302 (D.C.Cir.1997).

In *Arline*, the Court said that "[employers] cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies." *Arline*, 480 U.S. at 289 n. 19, 107 S.Ct. at 1131 n. 19. It is undisputed that Defendants' offer to all employees intra departmental and interdepartmental reassignments and that such reassignment was available to Plaintiff. It is also uncontested that Plaintiff's reassignment was blocked by Defendants' competitive hiring policy. Keeping in mind that the ADA requires an employer to "alter existing policies or procedures that they would not change for non-handicapped employees," *Buckingham*, 998 F.2d at 739, the Court holds that Defendants denied Plaintiff "an alternative employment opportunity reasonably available under [its] existing policies." *Arline*, 480 U.S. at 289 n. 19, 107 S.Ct. at 1131 n. 19. Defendants' only defense is "undue hardship." Modifying the policy to waive the competitive hiring process for disabled employees may be an undue hardship on Defendants, if it requires a fundamental

---

**4.** Decisions under the FRA are persuasive authority for ADA decisions. *Emrick*, 875 F.Supp. at 395.

alteration in the nature of the program. *Denver*, 943 F.Supp. at 1311 (citation omitted).

■ Under the ADA, "undue hardship" is "an action requiring significant difficulty or expense." *Id.* (citing 42 U.S.C. § 12111(10)(A)). Whether an accommodation would cause an employer "undue hardship," is determined after considering a number of statutory and regulatory factors, including the nature and cost of the accommodation needed, the financial resources of the covered entity, the type of operations of the covered entity and other factors. 42 U.S.C. § 12111(10)(B). "Undue hardship," like "reasonable" accommodation, is a relational term: the costs that the employer must assume are measured in relation to the benefits of the accommodation, including societal benefits of reducing dependency and nonproductivity. *Stone*, 118 F.3d at 98–100.

■ "Whether a particular accommodation will impose an undue hardship for a particular employer is determined on a case by case basis." *Denver* 943 F.Supp. at 1311 (quoting 29 C.F.R. App. § 1630.15(d)). Defendants have not presented any evidence nor demonstrated that the accommodation requested by Plaintiff would, in fact, cause it undue hardship. The clear implication of the ADA's statutory and regulatory language with regard to both reasonable accommodation and undue hardship is that an employer will violate the ADA by rejecting a worker with a disability, or a proposed accommodation, without first conducting an analysis to determine whether the proposed accommodation is reasonable and whether it really presents an undue hardship. *Denver*, 943 F.Supp. at 1312 (quoting Barbara A. Lee, *Reasonable Accommodation Under the Americans with Disabilities Act: The Limitations of Rehabilitation Act Precedent,* 14 Berkeley J.Empl. & Lab.L. 202, 219 (1993)).

Defendants have not explained, and the Court cannot imagine, how the reassignment of two or three disabled employees every couple of years to positions they are qualified to fill would cause the University to completely modify its personnel system's competitive hiring policy. In short, the Defendants offer no evidence that it has conducted an

analysis to determine whether the proposed accommodation is reasonable and whether it actually presents an undue hardship. Defendants have failed to produce evidence from which a reasonable trier of fact could find that accommodating such individuals would cause it an undue hardship. Under the circumstances, Plaintiff has succeeded in establishing that Defendants' policy or practice that all reassignments are made through competitive hiring prevents the reassignment of employees with disabilities to vacant positions for which they are qualified and discriminates against "qualified individuals with disabilities." Therefore, partial summary judgment is granted to Plaintiff: Defendants' policy and practice violate the ADA, § 504 of the FRA, and the ACRA.

### C. *Plaintiff's § 1983 Claim is Not Precluded by the Comprehensive Remedial Schemes of the ADA and the FRA*

■ Defendants contend that Plaintiff's § 1983 claim must be dismissed because the comprehensive remedial schemes in the ADA and the FRA preclude such relief. Essentially, Defendants argue that Plaintiff's § 1983 claim cannot be predicated on their violation of the ADA or the FRA because where Congress has enacted a statute with a comprehensive enforcement mechanism, a separate claim for § 1983 enforcement is not available. *Middlesex Cty. Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 21, 101 S.Ct. 2615, 2627, 69 L.Ed.2d 435 (1981). This Court, however, must " 'not lightly conclude the Congress intended to preclude reliance on § 1983 as a remedy for the deprivation of a federally secured right. The burden is on the [Defendant] to show by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement.' " *Madsen v. Boise State University*, 976 F.2d 1219, 1225 (9th Cir.1992) (Norris, J., dissenting) (quoting *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 520–21, 110 S.Ct. 2510, 2523, 110 L.Ed.2d 455 (1990)). Judge Norris pointed out that since its ruling in *Wilder*, the Supreme Court had only twice held statutory remedial schemes to be comprehensive enough to displace § 1983: *Middlesex Coun-*

*ty Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) (Federal Water Pollution Control Act) and *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984) (Education of the Handicapped Act). *Id.* In *Madsen,* Judge Norris found that nothing in the FRA itself foreclosed § 1983 relief. Indeed, such a holding has widespread acceptance. *See also, Independent Housing Servs. v. Fillmore Ctr. Assoc.,* 840 F.Supp. 1328, 1345 (N.D.Cal.1993).

"Moreover, this analysis yields the same result with respect to the ADA."[5] *Ferguson v. City of Phoenix,* 931 F.Supp. 688, 698 (D.Ariz.1996) (citing *Independent Housing Servs.,* 840 F.Supp. at 1345). In their assertion that the ADA and the FRA have comprehensive remedial schemes, Defendants overlook that the scheme flows from the administrative regulations and is not an expression of Congress' intent to foreclose alternative relief. As Judge Norris concluded in *Madsen,* the ADA and the FRA do not preclude Plaintiff's § 1983 claim.

D. *Wrongful Termination under ACRA and Plaintiff's Claims Against Defendants' Van Ort and Sypherd*

Defendants do not deny that a claim of wrongful discharge in violation of public policy can be predicated on a violation of the ACRA, *Broomfield v. Lundell,* 159 Ariz. 349, 767 P.2d 697 (1988), but Defendants contest Plaintiff's predication of the claim on a violation of federal law, meaning the ADA. *See Wagenseller v. Scottsdale Memorial Hospital.* 147 Ariz. 370, 378, 710 P.2d 1025, 1033 (1985) (the public policy at issue in a wrongful termination claim is the law of the state). In light of this Court's holding that Defendants' policy violates the ACRA, Defendants do not prevail on summary judgment regarding Plaintiff's wrongful termination claim.

 Under ACRA, Plaintiff submits that she may proceed against individually named Defendants Van Ort and Sypherd because an "employer" is "a person who has fifteen or

more employees for each working day in each of twenty or more calendar weeks in the current or preceding year, and **any agent of such person....**," A.R.S. § 41–1461(2) (emphasis added). This definition mirrors the definition of "employer" found in Title VII and the ADA and is similar to the definition found in the Age Discrimination in Employment Act (ADEA). *See* 42 U.S.C. § 2000e(b); 42 U.S.C. § 12111(5)(A) and 29 U.S.C. § 630(b). Under Title VII and the ADEA, however, an individual employee is not an "employer" for purposes of liability. *Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583 (9th Cir.1993), *cert. denied,* 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994). Plaintiff misunderstands the meaning of the phrase "any agent of such person." It is used within the context of defining employers: "those with fewer than 15 employees." 42 U.S.C. § 12111(5)(A). Congress only intended to underscore the notion that the employer is derivatively liable under the principle of respondeat superior for discriminatory acts of its agent employees. *Id.* at 588. This Court finds federal case law to be persuasive in interpreting the ACRA because of the similarities between it and the federal antidiscrimination laws. *Civil Rights Div. of Arizona Dept. of Law v. Superior Court In and For Pima County,* 146 Ariz. 419, 424, 706 P.2d 745, 750 (1985); *Bogue,* 179 Ariz. at 26, 875 P.2d at 1331; *Matos v. Phoenix,* 176 Ariz. 125, 128, 859 P.2d 748, 751 (1993). Plaintiff cannot proceed against Defendant supervisors Van Ort and Sypherd under the ADA, FRA, nor ACRA.

E. *A Prima Facia Case*

 To obtain relief, Plaintiff must establish that (1) she is a disabled person within the meaning of the ADA; (2) she is qualified,[6] with or without reasonable accommodation, to perform the essential functions of the job which she holds or seeks; and (3) she has suffered an adverse employment action because of her disability. *Gates v. Rowland,* 39 F.3d 1439, 1445 (9th Cir.1994);

---

**5.** In the Ninth Circuit, proceeding under Title VII does not preclude a § 1983 claim. *Roberts v. College of the Desert,* 870 F.2d 1411 (9th Cir. 1988).

**6.** Under the ADA, "qualified" is defined, in part, by "satisfy[ing] the requisite skill, experience, education, and other job-related requirements of the position." 29 C.F.R. § 1630.2 (1996).

*White v. York Intern. Corp.,* 45 F.3d 357, 360–61 (10th Cir.1995). Plaintiff bears the burden of proof for establishing each of these elements. Therefore, Defendants can prevail on summary judgment by pointing out that there is an absence of evidence to support Plaintiff's case. Plaintiff must set forth specific facts showing that there is some genuine issue for trial on each element.

For purposes of their Motion for Summary Judgment, Defendants do not challenge Plaintiff's status as disabled. As to the second element of Plaintiff's case, she provides substantial evidence, which is largely uncontested, that she was qualified to perform numerous jobs to which she could have been reassigned. There were at least 16 clerical positions with less than 40% word processing, including one position with no word processing and five with 15% or less word processing. (Plaintiff's Reply at 12 n. 15 citing Statement of Facts (SOF) at ¶ 55); *see also,* (SOF at ¶¶ 6, 8–9, 43–56, 64.) Plaintiff's satisfied the third element of her case when Defendants terminated her employment rather than reassign her to a job she was qualified to perform. Therefore, Plaintiff survives Defendants' Motion for Summary Judgment.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment is GRANTED; Defendants' policy that a qualified employee with a disability seeking accommodation by reassignment must compete with all other applicants for reassignment, violates the ADA, the FRA and the ACRA.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is DENIED IN PART and GRANTED IN PART.

**IT IS FURTHER ORDERED** Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's ACRA claim against Defendants Sypherd and Van Ort; Plaintiff may not proceed against these Defendants under ACRA.

**IT IS FURTHER ORDERED** that Plaintiff having withdrawn her claim of retaliation, Defendants' Motion for Summary Judgment as to that issue is DENIED as MOOT.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is DENIED in all other parts.