Darron S. HOWELL, Plaintiff,

v.

MICHELIN TIRE CORPORATION, Defendant.

Civ. A. No. 93–T–1309–S.

United States District Court, M.D. Alabama, Southern Division.

Aug. 2, 1994.

**1490**

Candis A. McGowan, Patrick F. Clark, and Patricia Guthrie Fraley, Cooper, Mitch, Crawford, Kuykendall & Whatley, Birmingham, AL, for plaintiff.

Henry Clay Barnett, Jr., Capell, Howard, Knabe & Cobbs, P.A., Montgomery, AL, Paul B. Lindemann, Jackson, Lewis, Schnitzler & Krupmann, Greenville, SC, and Stephen X. Munger, Jackson, Lewis, Schnitzler & Krupman, Atlanta, GA, for defendant.

## ORDER

MYRON H. THOMPSON, Chief Judge.

Plaintiff Darron S. Howell brings this action claiming that he was discriminated against because of a congenital hip disability in violation of the Americans with Disabilities Act, 42 U.S.C.A. §§ 12101–12213, commonly referred to as the "ADA." He alleges that, by refusing to reassign him to permanent light duty at its facility in Dothan, Alabama, defendant Michelin Tire Corporation failed to "reasonably accommodate" his condition. Howell seeks compensatory and punitive damages and has demanded a jury trial on whether he is entitled to these damages. This lawsuit is now before the court on Michelin's motion for summary judgment. For the reasons that follow, the motion will be denied.

## I. BACKGROUND

Howell was employed at Michelin's Dothan tire manufacturing facility from 1988 to 1993. His job required that he run a machine called an "FE complexor," which joins strips of rubber together to form the sidewalls of a tire. In September 1992, Howell informed Michelin that he suffered from a congenital deformation of the hip area, known as hip dysplasia.[1] For a few weeks, Howell was temporarily reassigned to a light-duty job in the factory's decomplexing area. Decomplexing is a reverse operation in which scrap is re-separated into individual components for purposes of salvage and reclamation.

In October 1992, Howell returned to his regular job as a complexor operator. However, after a little over a week, Howell injured his hip while bending over to pick up an assembly part. Again, Howell was unable to continue his complexor work and had to take another temporary assignment to light duty in the decomplexing area.[2] Howell remained in the decomplexing area for 13 weeks, the maximum period Michelin says that it allots for temporary light-duty rotation. Because Howell was still unable to return to his regular work at the end of this period and because, according to Michelin, there were no permanent light-duty jobs available, Howell was forced to go on short-term disability.

While on disability, Howell elected to have surgery to improve his hip condition.[3] There were complications with the operation, and Howell was completely impaired for three months. Furthermore, while making a visit to the Michelin factory in July 1993, Howell slipped down a flight of stairs and re-injured his back and hip. As a result of these misfortunes, Howell maintains that he is currently unable to do any manual work at either the complexor or the decomplexor position.

Howell then filed this lawsuit under the ADA, contending that Michelin failed to reasonably accommodate his disability when it would not reassign him to a permanent light-duty position. Michelin contends that it is entitled to summary judgment on the ground that Howell has not created a genuine dispute of material fact.

---

1. The record in this case is unclear when Howell first learned of this condition.

2. While Howell was on light-duty work, Michelin made various efforts to accommodate his condition. He was allowed to do several tasks while sitting and he was not held to the same production standards as the regular decomplexor operators.

3. Howell contends that he elected to have surgery only because Michelin seemed unable or unwilling to accommodate him with a new position.

## II. DISCUSSION

### A. *Summary Judgment Standard*

 Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Once the party seeking summary judgment has identified the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing how the responsibilities on the movant and the nonmovant vary depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or nonmovant bears the burden of proof at trial). In considering a summary judgment motion, the underlying facts and all reasonable inferences must be drawn in the light most favorable to the non-movant. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### B. *Reasonable Accommodation*

Under the ADA, private employers may not discriminate against an otherwise qualified worker because of a disability. 42 U.S.C.A. § 12112.[4] Employers must make "reasonable accommodation," § 12112(b)(5)(A),[5] unless the employer can show that the accommodation would impose an "undue hardship." § 12111(10)(A).[6] A reasonable accommodation would be one that would "enable the employer's employees with disabilities to enjoy equal benefits and privileges of employment as are enjoyed by employees without disabilities." 29 C.F.R. Part 1630, App. § 1630.2(*o*).[7]

Michelin contends that, throughout Howell's difficulties, it provided reasonable accommodation to him. The company points out that, on two separate occasions, Howell was reassigned to light-duty work on a temporary basis; that, while on light-duty work, he was not forced to stand and he was not

4. Section 12112(a) provides that:

"No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

5. Section 12112(b)(5)(A) provides in part that:

"the term 'discriminate' includes ... not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."

6. Section 12111(10)(A) defines an "undue hardship" as "an action requiring significant difficulty or expense, when considered in light of the factors set forth in subparagraph (B)." Subparagraph (B) then provides that:

"In determining whether an accommodation would impose an undue hardship on a covered entity, factors to be considered include—
(i) the nature and cost of the accommodation needed under this chapter;

(ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;
(iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
(iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity."

7. There are three categories of reasonable accommodation:

"These are (1) accommodations that are required to ensure equal opportunity in the application process; (2) accommodations that enable the employer's employees with disabilities to perform the essential functions of the position held or desired; and (3) accommodations that enable the employer's employees with disabilities to enjoy equal benefits and privileges of employment as are enjoyed by employees without disabilities."
29 C.F.R. Part 1630, App. § 1630.2(*o*).

held to the usual production standards; and that several vacant positions were reviewed in an attempt to find Howell a permanent light-duty assignment.

Michelin concedes that it rejected Howell's suggestion in early 1993 that his temporary light-duty job be converted into a permanent assignment. The company contends, however, that it had no obligation to "create" a new light-duty job. Michelin relies on the Equal Employment Opportunity Commission's Technical Assistance Manual on the ADA. According to § 9.4 of the manual,

> "The ADA does not require an employer to create a 'light duty' position unless the 'heavy duty' tasks an injured worker can no longer perform are marginal job functions which may be reallocated to co-workers as part of the reasonable accommodation of job restructuring. In most cases, however, 'light duty' positions involve a totally different job from the job that a worker performed before the injury. Creating such positions by job restructuring is not required by the ADA.... If the position was created as a temporary job, a reassignment to that position need only be for a temporary period."

Howell responds that Michelin has selectively quoted from the manual. Although the manual states that an employer need not create a light-duty position, it also provides that, "if an employer already has a vacant light duty position for which an injured worker is qualified, it might be a reasonable accommodation to reassign the worker to that position." Similarly the ADA and regulations promulgated by the Equal Employment Opportunity Commission provide for reassignment of workers to existing vacant positions. 42 U.S.C.A. § 12111(9)(B) states that, "The term 'reasonable accommodation' may include ... reassignment to a vacant position".[8] 29 C.F.R. Part 1630, App. § 1630.2(o) states that, "Reassignment to a vacant position is ... a potential reasonable accommodation."

A reasonable accommodation, therefore, is one that would enable an employee with a disability to enjoy an equal opportunity for benefits and privileges of employment as are enjoyed by employees without disabilities. It includes reassignment to a vacant position. Reasonable accommodation, however, does not require that an employer create a light-duty position or a new permanent position. But, if an employer has a vacant light-duty position or a vacant permanent position for which the disabled employee is qualified, it would be a reasonable accommodation to reassign the employee to that position. If the position was created as temporary job, the reassignment to that position need only be for the temporary period of the job. Therefore, if a light-duty job is a temporary job, reassignment to that job need only be for the temporary period of the job, and an employer need not convert a temporary job into a permanent one. However, if a light-duty job is a permanent job, the assignment to the job must be for the entire time the job exists. Obviously, the employer is not required to reassign a disabled person to a vacant position unless the disabled person is qualified for the position. A disabled person is qualified for a vacant position if he can perform the "essential functions" of the position, with or without a reasonable accommodation, such as a restructuring, with regard to the position. 42 U.S.C.A. § 12111(8) & (9).

Howell contends that, despite Michelin's apparent limit of 13 weeks for temporary light-duty assignments, the company has accommodated other employees by reassigning them to light-duty tasks for much longer periods. He names at least two employees, Adam Phyall and Marvin Peters, who were still assigned to what amounted to light duty after their 13-week "temporary" period ended. Both these employees, Howell maintains, were allowed to do only light-duty work for periods exceeding 13 weeks, in one

---

**8.** Section 12111(9)(B) provides in part that: "The term 'reasonable accommodation' may include ... job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment

or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities."

case eleven months and in the other two years. Howell also disputes Michelin's contention that there were no vacancies in its light-duty force. According to Howell, a position in the decomplexing area was available in late 1992, but was filled by Nancy Lambeth, a worker who had not even requested a decomplexing assignment. Howell suggests that his new experience in decomplexing left him well-equipped to fill this position and that his condition would have required only the minimal adjustment of allowing him to perform his duties while sitting down.

In rebuttal, Michelin claims that Howell has mischaracterized the nature of Phyall's and Peters's reassignments. Michelin's version of events is as follows: Phyall, rather than being reassigned to a long-term light-duty assignment, was actually relocated into a vacant permanent position in the decomplexing area. Similarly, the company argues that Peters was transferred not to long-term light duty but to another vacancy, this time in the plant's cleaning operations. As to Lambert, Michelin suggests that she was selected for the decomplexing position that became vacant in late 1992 because she too had become partly disabled and the company was simply forced to choose between competing claims for accommodation between Howell and Lambeth. Michelin indicates that it could not have accommodated both employees.

Presented with this evidence, the court is persuaded that Howell has created a genuine dispute as to whether Michelin reasonably accommodated him and, if not, whether the company could have reasonably accommodated him without an undue burden. First, Michelin has not sufficiently explained its treatment of Phyall and Peters. Even if these two employees were not reassigned to jobs that Michelin formally classifies as light duty, this may be beside the point. Howell's contention is that regardless of the classification of the jobs, Phyall and Peters were allowed to transfer to assignments less strenuous than their previous work. From this a factfinder could conclude that Michelin does

have the ability to find new, less strenuous positions for disabled workers, whether or not it formally classifies the work as "light duty."

Furthermore, there is still a genuine issue of fact regarding the filling of the vacant decomplexing position in late 1992. Howell disputes Michelin's version of events: relying on Lambeth's own testimony, Howell contends that the circumstances suggest that Lambeth's reassignment was actually a placement in a temporary post and that the permanent decomplexor vacancy might have stayed unfilled. If Howell's version is closer to being correct, Michelin's actions regarding Lambeth may be further evidence of the company's ability to accommodate workers without relying on specific vacancies.

Finally, Michelin also claims that Howell's arguments regarding Lambeth are in fact a separate claim under the ADA and that the claim should be barred because it was not brought within the time period allowed by the statute of limitations. However, the dispute about Lambeth's status is better understood as evidence relevant to Howell's case. There is nothing in the pleadings or the structure of Howell's complaint to suggest that Lambeth's status is the basis of a separate claim.

### C. Good Faith Effort

■ Michelin suggests that, even if the evidence now reflects that the company could have made a reasonable accommodation, it is still not subject to compensatory and punitive damages because it made a "good faith" effort to accommodate Howell. The ADA provides that the employer is not subject to punitive or compensatory damages if it "demonstrates good faith efforts, in consultation with the person with the disability who has informed the covered entity that accommodation is needed, to identify and make a reasonable accommodation that would provide such individual with an equally effective opportunity and would not cause an undue hardship on the operation of the business". 42 U.S.C.A. § 1981a(a)(2) & (3).[9] In support of

---

**9.** Section 1981a(a)(2) provides:
 "In an action brought by a complaining party under the powers, remedies, and procedures

set forth in section 706 or 717 of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000e–5 or 42 U.S.C.A. § 2000e–16] (as provided in sec-

its argument that it acted in good faith, Michelin again argues that it made diligent efforts to find Howell a permanent position; that it accommodated Howell by allowing him to sit during his decomplexing assignments and relieving him from normal productivity standards; that it regularly consulted with Howell during the effort to resolve his employment future; and finally, that it responded to Howell's condition by placing him in temporary assignments rather than discharging him altogether.

None of these claims adequately rebuts Howell's contention that the company failed to act in good faith. The very evidence that suggests that the company did not reasonably accommodate Howell is also probative of a lack of good faith: if other employees were allowed to remain on light duty for prolonged periods and if an available opening was filled with an employee other than Howell at the same time Michelin was supposedly endeavoring to find Howell work, there is evidence that Michelin's efforts at accommodation might have been less than diligent. Summary judgment on this issue is inappropriate.

█ Michelin finally argues that Howell's demand for a jury trial should be struck. 42 U.S.C.A. § 1981a(c)(1) provides, in part, that, "If a complaining party seeks compensatory or punitive damages under [the ADA] ... any party may demand a trial by jury." Michelin contends that, because Howell is not entitled to compensatory or punitive damages as a matter of law, he is also not entitled to a jury trial. *See Landgraf v. USI Film Products,* —— U.S. ——, ——, 114

S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994) ("because § [1981a](c) makes a jury trial available only '[i]f a complaining party seeks compensatory or punitive damages,' the jury trial option must stand or fall with the attached damages provisions"). However, because, as explained above, Howell has a colorable claim for compensatory and punitive damages, he is also entitled to a jury trial.

Accordingly, it is ORDERED that the motion for summary judgment, filed by defendant Michelin Tire Corporation on April 22, 1994, be and it is hereby denied.

tion 107(a) of the Americans with Disabilities Act of 1990 (42 U.S.C. 12117(a)), and section 794a(a)(1) of Title 29, respectively) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) under section 791 of Title 29 and the regulations implementing section 791 of Title 29, or who violated the requirements of section 791 of Title 29 or the regulations implementing section 791 of Title 29 concerning the provision of a reasonable accommodation, or section 102 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12112), or committed a violation of section 102(b)(5) of the Act [42 U.S.C.A. § 12112(b)(5)], against an individual, the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any

relief authorized by section 706(g) of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000e–5(g)], from the respondent."

However, subsection (3) further provides that: "In cases where a discriminatory practice involves the provision of a reasonable accommodation pursuant to section 102(b)(5) of the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12112(b)(5)] or regulations implementing section 791 of Title 29, damages may not be awarded under this section where the covered entity demonstrates good faith efforts, in consultation with the person with the disability who has informed the covered entity that accommodation is needed, to identify and make a reasonable accommodation that would provide such individual with an equally effective opportunity and would not cause an undue hardship on the operation of the business."