Eldon Wayne RILEY, Jr., Plaintiff,

v.

WEYERHAEUSER PAPER
CO., Defendant.

No. 3:94cv11–MU.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Sept. 5, 1995.

Geraldine Sumter, Charlotte, NC, for plaintiff.

M. Daniel McGinn, Greensboro, NC, for defendant.

## ORDER

MULLEN, District Judge.

This matter is before the Court upon motion of the Defendant Weyerhaeuser Paper Company for summary judgment. For the reasons stated herein, the Defendant's motion will be granted.

Plaintiff, a former employee of the Defendant, has filed this suit alleging that the Defendant discriminated against him by failing to accommodate his disability and terminating his employment, in violation of the Americans With Disabilities Act, 42 U.S.C. § 12112 *et seq.* ("ADA"). Plaintiff was hired by the Defendant at its Hovis Road facility in Charlotte in April of 1990. That facility manufactures container board packaging and is within the Containerboard Packaging Division of Weyerhaeuser Company. Hourly

production and maintenance employees at that facility are represented by Local 1821 of the United Paperworkers International Union. Wages, hours and other terms and conditions of employment for bargaining unit employees are governed by a collective bargaining agreement ("CBA") between the Hovis Road facility and the Union. The Plaintiff was hired into a job covered by the CBA and was a Union member. At the time he was hired, the Plaintiff disclosed to Katie Barta, the Human Resources Director for the facility, that he was blind in one eye. After a training period, Plaintiff operated a 245 rotary die cutter, a machine with sharp rotating blades. After experiencing some blurred vision and dizziness which interfered with the quality of his work production, Plaintiff was sent to a physician and was ultimately diagnosed as having multiple sclerosis ("MS"). Plaintiff's physician concluded that Plaintiff could not safely operate or work around machinery. The Defendant contends that it then engaged in a process of considering reasonable accommodations, but was unsuccessful in identifying any reasonable accommodation that would enable the Plaintiff to perform the essential functions of an available position for which he was otherwise qualified. Accordingly, the Plaintiff was terminated. After seeking appropriate administrative remedies, Plaintiff filed the present complaint.

■ Defendant first argues that this Court lacks subject matter jurisdiction over Plaintiff's claim because Plaintiff failed to submit the matter of his termination to the mandatory grievance and arbitration procedures under the CBA. In making this argument, Defendant relies on *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), where the Supreme Court held that a claim under the Age Discrimination in Employment Act (ADEA) could be subjected to compulsory arbitration pursuant to an arbitration agreement. In arriving at this holding, however, the Court noted that "not all statutory claims may be appropriate for arbitration," and, where Congress "has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue," a party may not be compelled to arbitrate his claim before seeking judicial remedies. *Gilmer*, 500 U.S. at 26–27, 111 S.Ct. at 1652, (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985)). The Court noted that Congressional intent may be determined in the text of the statute, in its legislative history, or in an inherent conflict between arbitration and the statute's underlying purposes. *Id.* While the text of the statute in § 12112 does encourage the use of alternative means of dispute resolution where appropriate, including arbitration, the legislative history of the Act is unequivocal in expressing Congress's intent to preclude a waiver of judicial remedies:

> [T]he use of alternative dispute resolution mechanisms is intended to supplement, not supplant, the remedies provided by this Act. Thus, for example ... any agreement to submit disputed issues to arbitration, whether in the context of a collective bargaining agreement or in an employment contract, does not preclude the affected person from seeking relief under the enforcement provisions of this Act.

H.R.Rep. No. 485(III), 101st Cong., 2nd Sess. (1990) *reprinted in* 1990 U.S.C.C.A.N. pp. 267, 445, 499–500.

As Congress has clearly expressed its intent that the statutory rights and judicial remedies of the ADA cannot be waived, under *Gilmer*, the grievance and arbitration provisions of the CBA do not preclude Plaintiff from pursuing his judicial remedies. Accordingly, Defendant's argument that the Court lacks subject matter jurisdiction is without merit.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual ..." 42 U.S.C. § 12112(a). To state a claim, a plaintiff must be a "qualified individual with a disability", defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

The Fourth Circuit has developed two analytical frameworks for ADA claims. *Vazquez v. Bedsole*, 888 F.Supp. 727, 730 (E.D.N.C.1995). Most recently, in *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55 (4th Cir.1995), the court held that the *McDonnell Douglas* scheme of proof applies to claims brought under the ADA. 53 F.3d at 59. This framework is utilized in cases where the employer articulates a legitimate, non-discriminatory justification for terminating a disabled employee's employment. *Vazquez*, 888 F.Supp. at 730. However, when, as here, the employer relies upon the employee's disability in terminating the employee, a three-prong analysis is applied. *See Id.* This three-prong analysis was set forth in the case of *Tyndall v. National Educ. Centers*, 31 F.3d 209 (4th Cir.1994). Under the *Tyndall* analysis, the plaintiff has the burden of establishing a violation of the ADA by proving: 1) that he has a disability; 2) that he is otherwise qualified for the position in question; and, 3) that he was terminated based upon unlawful discrimination as a result of his disability. *Doe v. University of Md. Medical Sys. Corp.*, 50 F.3d 1261, 1264–65 (4th Cir.1995); *Tyndall*, 31 F.3d at 212; *Vazquez*, 888 F.Supp. at 731.

Under the ADA, a disability is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). The Plaintiff has been diagnosed with MS, a progressive disease of the central nervous system. His symptoms include vision and balance problems, as well as numbness and decreased sensation on his left side. Prior to the diagnosis of MS, Plaintiff also suffered from blindness in one eye. Plaintiff's physician restricted him from working around machinery or heights. The Court finds that Plaintiff has sufficiently established that he suffers from a disability.

Plaintiff next has the burden of establishing that he is otherwise qualified for the position in question. To determine whether the Plaintiff is "qualified", the Court must decide 1) whether he could perform the essential functions of his job, and 2) if not, whether any reasonable accommodation by the Defendant would enable him to perform these functions. *See Tyndall*, 31 F.3d at 212–13.

A reasonable accommodation is an accommodation that would "enable the employer's employees with disabilities to enjoy equal benefits and privileges of employment as are enjoyed by employees without disabilities." 29 C.F.R. Pt. 1630.2(*o* ) App. (1994). This includes reassignment to a vacant position. 42 U.S.C. § 12111(9)(B). Employers must make "reasonable accommodation", unless the employer can show that the accommodation would impose an undue hardship on the operation of its business. 42 U.S.C. § 12112(b)(5)(A).

The Plaintiff bears the burden of demonstrating that he could perform the essential functions of his job with reasonable accommodation. *Tyndall*, 31 F.3d 209. It is undisputed that the Plaintiff's doctor concluded that due to Plaintiff's visual and balance problems the Plaintiff could not safely perform the essential functions of his 245 rotary die cutter position, nor could he work around any machinery, with or without reasonable accommodation. Thus, Plaintiff was not "qualified" for that position.

In general, only if an individual cannot perform his current position with a reasonable accommodation does an employer have to consider reassignment to a vacant position for which the individual is qualified. 29 C.F.R. pt. 1630, App. § 1630.2(*o* ) (1994). An employer is not required to reassign a disabled person to a vacant position unless the disabled employee is qualified for that position. *Howell v. Michelin Tire Corp.*, 860 F.Supp. 1488, 1492 (M.D.Ala.1994). A disabled person is qualified for a vacant position if he can perform the "essential functions" of the position, with or without reasonable accommodation. *Id.* It is important to note that the ADA does not require an employer to promote the disabled employee, bump another employee from his position or create a new position for the disabled employee. 29 C.F.R. pt. 1630, App. § 1630.2(*o* ); *White v. York International Corp.*, 45 F.3d 357, 362 (10th Cir.1995).

■ The Defendant has produced undisputed evidence of its efforts to consider reasonable accommodations, such as discussing with the Plaintiff, the plant superintendent, and the production manager what positions they believed Plaintiff could perform; preparing for the Plaintiff's physicians's consideration written job descriptions and videotapes of the positions Plaintiff believed he might be able to perform; contacting the Job Accommodation Network, a national resource providing information to employers about possible accommodations; and contacting the ADA Helpline, another resource for employers and persons with disabilities. After engaging in substantial discussions, evaluating alternative positions, and relying on the medical opinion expressed by Plaintiff's chosen physician, the Defendant concluded that there were no available positions for which the Plaintiff was qualified and which he could safely perform. Plaintiff conceded that he was unwilling to take any position unless his physician cleared him to perform it, and that he and Mrs. Barta agreed that since all jobs in the plant involved working around machinery, he could not perform any of them. Of the few jobs that Plaintiff might possibly have been able to perform safely, there were no vacancies in those positions during the time period between November 1, 1992 (the approximate date Plaintiff was diagnosed with MS) and May 7, 1993 (the effective termination date).

■ Plaintiff maintains that since he could not perform any of the available manufacturing positions at the Hovis Road facility, that the Defendant is under a statutory obligation to place him either in an available administrative or clerical position at Hovis Road, or to relocate him to another Weyerhaeuser facility that had an available position for which he was qualified. Defendant has produced evidence that during the relevant time period there were no office or administrative vacancies at the Hovis Road facility, and that the Plaintiff was not qualified for or could not safely perform the vacancies in the other Charlotte facilities or that transfer to such positions would have constituted a promotion. Moreover, Plaintiff has not produced evidence or set forth specific facts raising a genuine issue that he was qualified for any office or administrative position or that such a position was vacant during the relevant time period. While he contends that he was able to type 60 words per minute, and that he could operate a calculator and ten-key adding machine, he concedes that his typing speed was determined primarily during 3 years of typing that he took 18–20 years earlier in high school. Plaintiff also concedes that he never held a clerical or administrative job or a job requiring typing, and that he lacked any training or familiarity with computers. Plaintiff argues that he could have been trained for those positions. However, it appears to the Court that imposing an obligation on an employer to retrain a disabled employee in a new line of work goes far beyond the intended scope of the ADA to prevent employment discrimination against qualified individuals with disabilities.

Plaintiff's main contention is that the Defendant was obligated to transfer him to an available position for which he was qualified at another Weyerhaeuser facility. Weyerhaeuser is a large multinational corporation with approximately 300 facilities located in 40 states and 6 countries, and most facilities handle their own hiring of hourly employees. The Defendant has produced uncontroverted evidence that Weyerhaeuser does not have a policy or practice of transferring hourly employees from one facility to another. Employees desiring to work at another facility must reapply at the facility, and qualifications are generally evaluated by local management. If a person is hired as an hourly employee at another Weyerhaeuser facility, he starts at that facility as a new employee.

The issue in this case is whether the Defendant violated the ADA by terminating the Plaintiff instead of transferring him to a vacant position in another facility. The Defendant argues that as a matter of law it is not required to transfer Plaintiff to another facility to accommodate his disability. Plaintiff urges that a material issue of fact exists as to whether transferring him to another facility would cause Defendant undue hardship.

In the recent case of *Emrick v. Libbey-Owens–Ford Co.*, 875 F.Supp. 393 (E.D.Tex.

1995), the court addressed the issue of whether the ADA imposed an obligation on employers to transfer a disabled employee to another facility as a means of reasonable accommodation. Noting that the ADA is not intended to give disabled persons preferential treatment, but rather is intended to provide them with the same opportunities as their nondisabled counterparts, the court granted partial summary judgment in favor of the employer. The court stated:

> Because it is the aim of the ADA to merely ensure equality and not preference to disabled employees, an employer is only required to offer transfer to another facility in situations where it is the regular practice of that employer to transfer employees between facilities. To hold otherwise would entitle employees with disabilities to more opportunities for employment than are offered to employees without disabilities, and such is not the intent of the ADA.

*Emrick,* 875 F.Supp. at 398 (citations omitted). Finding that the defendant had produced evidence that it did not regularly transfer employees between its facilities, the court found as a matter of law that the defendant was not required by the ADA to offer the plaintiff a transfer to another facility as an attempt to reasonably accommodate his disability. *Id.*

Similarly, in *Reigel v. Kaiser Found. Health Plan of N.C.,* 859 F.Supp. 963 (E.D.N.C.1994), the court found that the ADA cannot be construed to require an employer "to find another job for an employee who is no longer qualified to perform the duties of the job previously held but discontinued by virtue of a disability, unless the employer normally provides such alternative employment under its existing policies". 859 F.Supp. at 973 (citing *Carter v. Tisch,* 822 F.2d 465, 467 (4th Cir.1987) (a case decided under the Rehabilitation Act). Moreover, the Fourth Circuit has recently spoken on the issue of an employer's duty to reasonably accommodate in narrow terms, stating that:

> This circuit has made it clear, however, that the duty of reasonable accommodation does not encompass a responsibility to provide a disabled employee with alternative employment when the employee is unable to meet the demands of his present position.

*Myers v. Hose,* 50 F.3d 278, 284 (4th Cir. 1995).

The Defendant herein has produced uncontroverted evidence that it does not have a policy allowing hourly employees to transfer from one facility to another. The Plaintiff argues that the Defendant's employment manual specifically recognizes that the Defendant will take affirmative action with regard to handicapped employees and that its effort will go beyond any type of minimum requirement in employment practices involving disabled employees. However, the language in the employment manual referred to by the Plaintiff merely sets forth a policy of nondiscrimination. It does not establish a program of affirmative action favoring employees with handicaps, nor does it establish a policy regarding transfer of disabled individuals. Moreover, even if the language in the Defendant's employment manual could somehow be construed to establish a policy giving disabled employees preferential treatment, Plaintiff's argument was expressly rejected by the Fourth Circuit in *Myers.* In *Myers,* the plaintiff attempted to rely on Personnel Rules which provided for an employee to have time to correct a disability. The court held that:

> A particular accommodation is not necessarily reasonable, and thus federally mandated, simply because the [employer] elects to establish it as a matter of policy. While the [employer] is free to exceed the requirements of the ADA in fashioning its policies regarding disabled employees, such policies are not the definitive source of the standard by which reasonable accommodation is measured under federal law.

*Myers,* 50 F.3d at 284.

In *White v. York Int'l,* 45 F.3d 357 (10th Cir.1995), the Tenth Circuit affirmed summary judgment for the employer, finding that the employee could not meet his "ultimate burden of persuading the trier of fact that he had been the victim of illegal discrimination based on his disability", where he could not identify a reasonable accommodation that the employer could have made, and

where he did not offer anything beyond his own subjective opinion as to what other jobs he could perform. 45 F.3d at 361–62. Even if the ADA could be construed to impose an obligation on an employer to transfer a disabled employee to a vacant position for which he was qualified at another facility, the Plaintiff, as in the *White* case, has failed to produce any evidence that such a position existed.

Even if the Plaintiff could meet his burden as to the second prong of the *Tyndall* analysis, he could not show that the Defendant's motive for terminating him was discriminatory. It is undisputed that Katie Barta, the Human Resources Director and the person responsible for terminating the Plaintiff, was the same person who hired the Plaintiff. At the time the Plaintiff was hired, Ms. Barta was aware that he was blind in one eye. The Fourth Circuit has held that in ADA cases a strong inference of nondiscrimination arises when the hirer and firer are the same person. *See Tyndall*, 31 F.3d at 214–15. The rationale is that "[a]n employer who intends to discriminate against disabled individuals or holds unfounded assumptions that such persons are not good employees would not be apt to employ disabled persons in the first place." *Id.* at 215. Moreover, the undisputed evidence is that after learning that the Plaintiff had MS, the Defendant retained him for over six months while investigating and considering his condition and capabilities. The Defendant terminated the Plaintiff only after concluding, based on the best medical information available to it, that the Plaintiff could not safely perform available positions. Plaintiff's evidence is plainly inadequate to raise a genuine issue of fact as to discrimination based on his disability.

IT IS THEREFORE ORDERED that the Defendant's motion for summary judgment is hereby GRANTED.