MANSMANN, Circuit Judge,
dissenting.
Because I would not hold that a requested accommodation for purposes of the ADA is per se unreasonable where it conflicts with the seniority provisions of a collective bargaining agreement, I respectfully dissent. Although the majority holding finds support in the easelaw, resolution of the issue before us is not as straightforward as the majority opinion suggests.
*85 Tension between the ADA and other labor relations statutes, particularly the National Labor Relations Act (“NLRA”), is inevitable. As one commentator observed:
While the ADA fosters equal employment opportunities for all Americans without regard to disability, its drafters ignored a very serious problem. The ADA, while promoting the rights of individual Americans in the workplace, conflicts dramatically with the[NLRA], an act designed to promote collective rights in the workplace. The ADA, the regulations, and the Interpretive Guidance all fail to address the issue of how to reasonably accommodate an individual with a disability under the ADA in a unionized setting — where such rights are typically received as part of a collective bargaining agreement. As a result of this oversight, conflicts between the NLRA and the ADA have arisen.
Robert W. Pritchard, Avoiding the Inevitable: Resolving the Conflicts Between the ADA and the NLRA, 11 The Labor Lawyer 375 (1995). This statutory tension has been particularly apparent where, as here, the duty to provide a reasonable accommodation under the ADA conflicts with an arguably contrary collective bargaining obligation.
The text of the ADA does not “decisively answer the question of whether ‘reasonable accommodation’ can require that otherwise valid seniority rights of other employees be trumped.” Eckles v. Consolidated Rail Corporation, 94 F.3d 1041, 1047 (7th Cir.1996). In this way, the ADA differs from other anti-discrimination statutes. For example, Title VII of the Civil Rights Act of 1964 (Title VII) specifically authorizes employers “[t]o apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system____” 42 U.S.C. § 2000e-2(h). The Age Discrimination in Employment Act (ADEA) contains an analogous provision: “It shall not be unlawful for an employer, employment agency or labor organization ... to observe the terms of a bona fide seniority system....” 29 U.S.C. § 623(f)(2)(A). Courts required to assess the competing concerns of reasonable accommodation and the sanctity of the collective bargaining agreement have regularly relied on precedent generated under the Rehabilitation Act of 1973 (the Rehabilitation Act). 29 U.S.C. § 701 et seq. “[T]he term ‘reasonable accommodation’ in the ADA was apparently borrowed from the regulations issued by the Equal Employment Opportunity Commission [EEOC] in implementation of the Rehabilitation Act----” Eckles, 94 F.3d at 1047. In determining whether an accommodation which conflicts with a collective bargaining agreement can ever be reasonable, courts construing the Rehabilitation Act have adopted a per se rule: a collective bargaining agreement will always “trump” the accommodation.[1]
Confronted with Congress’ failure to articulate definitively a different rule in cases arising under the ADA, a number of our sister courts of appeals have applied or have indicated that they would apply this Rehabilitation Act per se rule in reasonable accommodation cases arising under the ADA.[2] The majority, relying primarily upon the decision in Eckles, embraces this approach. I am convinced, however, that this per se rule, *86 imported from eases decided under the Rehabilitation Act, was not intended to apply in the context of the ADA.
Although the plain text of the ADA does not definitively resolve the issue before us, it does contain language which suggests that seniority systems, inviolable under the Rehabilitation Act, might, in certain circumstances, yield to reasonable accommodation claims. Unlike the Rehabilitation Act and Title VII, the ADA defines the term “reasonable accommodation” to include: “job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment ... and other similar accommodations for individuals with disabilities.” 42 U.S.C. § 12111(9)(B). In a unionized workplace, these potential accommodations will almost always conflict to some degree with established seniority systems. The ADA, however, indicates that these accommodations should be made available without addressing their impact on seniority concerns. While this feature of the ADA is not dispositive, it is significant, especially when it is considered against the background of the ADA’s broad sweep[3] and its legislative history.
The Report of the House Committee on Education and Labor supports the conclusion that under the ADA, the collective bargaining agreements, including those provisions impacting seniority, were not intended to “trump” reasonable accommodation claims:
The collective bargaining agreement could be relevant ... in determining whether a given accommodation is reasonable. For example, if a collective bargaining agreement reserves certain jobs for employees with a given amount of seniority, it may be considered as a factor in determining whether it is a reasonable accommodation to assign an employee with a disability without seniority to that job. However, the agreement would not be determinative on this issue.[4]
H.R.Rep. No. 485(II), 101st Cong., 2d Sess. 63 (1990), reprinted in 1990 U.S.C.C.A.N. 267, 345 (emphasis added). These reports provide sound foundation for the argument that Congress intended to depart from the line of authority developed under the Rehabilitation Act holding that a requested accommodation is per se unreasonable when it conflicts with a seniority provision in a collective bargaining agreement. The legislative history indicates that courts are obligated to look beyond the collective bargaining agreement in order to determine whether a particular accommodation is reasonable. The status of the collective bargaining agreement under the ADA has been diminished; it is now only one factor to be considered in determining whether a proposed accommodation is reasonable.
Additional evidence for this view of the role of collective bargaining agreements under the ADA is found in the legislative history relating to the “undue hardship” provisions of the Act. Under the ADA, an employer’s failure to make “reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability” constitutes prohibited discrimination “unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business.... ” 42 U.S.C. § 12112(b)(5)(A).
The EEOC regulations interpreting this section provide that an employer may demonstrate “that the provision of a particular accommodation would be unduly disruptive to its other employees or to the functioning of its business. The terms of a collective bargaining agreement may be relevant to this determination.” 29 C.F.R. § 1630.15(d) app. (1996) (emphasis added). The EEOC’s Technical Assistance Manual underscores the reduced role assigned to the collective bargaining agreement under the ADA, stating that “[t]he terms of a collective bargaining *87 agreement may be relevant in determining whether an accommodation would impose an undue hardship.” EEOC Technical Assistance Manual § 3.09, at III — 16 (1992). The example given in the Manual to illustrate the status of a collective bargaining agreement in determining undue hardship refers specifically to a situation where the requested accommodation conflicts with a seniority provision in a collective bargaining agreement:
A worker who has a deteriorated disc condition and cannot perform the heavy labor functions of a machinist job, requests reassignment to a vacant clerk’s job as a reasonable accommodation. If the collective bargaining agreement has specific seniority lists and requirements governing each craft, it might be an undue hardship to reassign this person if others had seniority for the clerk’s job.

Id.

Clearly, the EEOC did not assume that Congress, in drafting the ADA, had incorporated the per se rule adopted by the majority. If seniority provisions of a collective bargaining agreement were inviolate under the Act, any conflicting proposed accommodation would automatically be unreasonable; there would never be a need to consider whether such an accommodation posed an undue hardship.
The text of the ADA, its legislative history, and the relevant EEOC regulations convince me that there are enough dissimilarities between the Rehabilitation Act and the ADA to warrant rejection of the per se rule announced by the majority in favor of a fact-intensive approach which examines whether a particular proposed accommodation constitutes an “undue hardship.” This approach, which is consistent with the statute, the legislative history, and the regulations, protects all parties, including those other employees subject to the terms of the collective bargaining agreement by allowing each accommodation to be examined in light of its cumulative impact on the business operation as a whole. Far from being ignored under this approach, the collective bargaining agreement is relegated to its intended status as a factor to be considered in determining whether a requested accommodation imposes an undue hardship.
Although I recognize that the opinion of the Court of Appeals for the D.C. Circuit in Aka v. Washington Hospital, 116 F.3d 876 (D.C.Cir.1997), reh’g in banc granted and judgment vacated, 124 F.3d 1302 (D.C.Cir.1997), lacks precedential value, I find its analysis and rejection of Eckles sound and adopt its reasoning as the essence of my disagreement with the majority:
[I] reject the Eckles court’s analysis because the plain language of the ADA requires employers to provide accommodations to the disabilities of qualified employees unless the accommodation in question would be “unreasonable” or would impose an “undue hardship,” because the suggested “reasonable accommodations” listed in the statute include several ... that commonly will conflict to some degree with the applicable collective bargaining agreements in unionized workplaces — including the portions of those agreements creating “seniority rights,” and because both the legislative history of the ADA and the relevant EEOC regulations clearly indicate that the fact that a particular accommodation would require some departure from the terms of a collective bargaining agreement should not in itself determine the question of whether an employer may be required to provide the accommodation ....
* * * * * *
[I] likewise think it is inappropriate to draw blanket conclusions regarding whether the ADA can “trump” provisions in collective bargaining agreements, or whether the ADA can require the “sacrifice[ ]” of “rights” created in other employees by these agreements....
[AJfter all, in some cases the degree of infringement imposed ... may impose virtually no “hardship” at all. If one nondisa-bled employee entitled to a vacant position under the seniority system in the collective bargaining agreement must wait an extra day before receiving an identical assignment because the earlier vacancy was filled by a disabled employee pursuant to the *88 ADA, would this entail the “sacrifice” of rights created in other employees under the agreement? ... [I] think that the ADA’s “reasonable accommodation” provisions require us to bear in mind that conflicts between accommodations to disabled employees and the terms of applicable collective bargaining agreements exist on a continuum rather than functioning like an “on/off switch.”[5]
At 895-96 (citations omitted).
The approach adopted by the majority in reliance on Eckles could well lead to absurd results which run counter to the broad remedial purposes of the ADA.[6] The better approach would be to jettison the per se rule developed in the context of the far less sweeping Rehabilitation Act in favor of the balancing process already in place under the ADA in the determination of “undue hardship.” The result reached in Eckles under the undue hardship balancing analysis would likely be unchanged where in this case, the outcome would be far less certain.
For the foregoing reasons, I would reverse the order of the district court granting summary judgment in favor of the Commission based on the court’s conclusion that the requested accommodation was per se unreasonable. In all other respects, I would affirm the order of the district court.

. See, e.g., Shea v. Tisch, 870 F.2d 786 (1st Cir.1989); Carter v. Tisch, 822 F.2d 465 (4th Cir.1987); Daubert v. United States Postal Service, 733 F.2d 1367 (10th Cir.1984).

. Maj. opinion at 79. It is important to note that the courts in Milton v. Scrivner, Inc., 53 F.3d 1118 (10th Cir.1995), and Wooten v. Farmland Foods, 58 F.3d 382 (8th Cir.1995), discussed the per se rule in the context of the ADA in dicta. Neither analyzed the conflict between the ADA and the NLRA.
It is important to note, too, that a number of commentators have criticized application of a per se rule in the context of the ADA. See Jerry M. Hunter, Potential Conflicts Between Obligations Imposed on Employees and Unions by the National Labor Relations Act and the Americans with Disabilities Act, 13 N. Ill. U.L.Rev. 207 (1993); Robert W. Pritchard, Avoiding the Inevitable: Resolving the Conflicts Between the ADA and the NLRA, 11 The Labor Lawyer 375 (1995); Joanne Jocha Ervin, Reasonable Accommodation and the Collective Bargaining Agreement Under the Americans with Disabilities Act, 1991 Det. C.L.Rev. 925 (1991); Rose-Daly Rooney, Note, Reconciling Conflicts Between the Americans with Disabilities Act and the National Labor Relations Act to Accommodate People With Disabilities, 6 DePaul Bus. L.J. 387 (1994).

. The ADA expanded the scope of the Rehabilitation Act both in coverage and in the degree of protection afforded. See, Note, Civil Rights and the Disabled: A Comparison of the Rehabilitation Act of 1973 and the Americans with Disabilities Act of 1990 in the Employment Setting, 54 Alb. L.Rev. 123 124-25 (1989).

. The Report of the Senate Committee on Labor and Human Resources contains language identical to that of the House Report. See S.Rep. No. 101-116 at 32 (1989).

. A similar result was reached in a case decided prior to Eckles, Emrick v. Libbey-Owens-Ford Co., 875 F.Supp. 393, 396 (E.D.Tex.1995).

. The academic response to the decision in Eckles has been less than enthusiastic. See William Mcdevitt, Seniority Systems and the Americans with Disabilities Act: The Fate of Reasonable Accommodation after Eckles, 9 St. Thomas L.Rev. 359 (1997); Condon A. McGlothlen and Gary N. Savine, Eckles v. Consolidated Rail Corps Reconciling the ADA with Collective Bargaining Agreements: Is This the Correct Approach?; 46 DePaul L.Rev. 1043 (1997).